OPINION
The State of Ohio is appealing pursuant to R.C. 2945.67 the decision of the trial court dismissing a case against Thomas C. Johnson with prejudice. The sole assignment of error by the State is:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING THE INDICTMENT AGAINST THE DEFENDANT WITH PREJUDICE BECAUSE DISMISSAL IS TOO SEVERE OF A SANCTION FOR DISCOVERY VIOLATIONS THAT CAUSE NO PREJUDICE TO THE DEFENDANT'S CASE AND DO NOT DENY HIM A FAIR TRIAL.
Johnson was arrested and jailed on August 2, 2000, and subsequently indicted on September 8, 2000, on a charge of receiving stolen property.
In dismissing the case against Johnson, the trial court obviously was acting pursuant to Crim.R. 16(E)(3) which provides: If at anytime during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule [discovery rules] the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. (Emphasis supplied).
A review by an appellate court of the sanction imposed by a trial court for discovery violations is whether the sanction constituted an abuse of discretion. State v. Parson (1983), 6 Ohio St.3d 442, 445. The record in this case reveals that during the four months following the incarceration of the defendant up to the morning of the date set for trial, the prosecutor's office still had not turned over to the defendant's appointed counsel an exculpatory fingerprint report, photographs which had been made by the police, an accurate witness list, or the bill of particulars as ordered by the court, which had also ordered the aforementioned items to be turned over to the defense. In addition, the prosecutor was attempting to add a previously undisclosed witness for the trial that day. In chambers, counsel for defendant orally moved to dismiss the charges against Mr. Johnson. This conference in chambers was transcribed, and it reveals a series of egregious errors by the prosecutor's office, whether unintentional or not, in not providing the defense the items mentioned above which had been ordered by the court. The transcript reveals clearly that the bill of particulars had never been turned over to the defense, although it had been read to counsel over the telephone.
As to the exculpatory fingerprint report, defense counsel stated: "I know that the Prosecution has had access to that report for at least two months. I have never received a copy of that report. . . It's a fingerprint — a — a report done from fingerprints on this car that exculpatate — exculpatory to my client. Apparently a palm print was found that did not belong to Mr. Johnson. And no other prints were found. Uh . . . I've been promised that report. I've never seen it and never received it. (Tr. 2 — 3).
Defense counsel lists another discovery violation in that two witnesses named by the State, and who are apparently key eyewitnesses, had been listed at address which turned out to be inaccurate, and the investigators sent out by defense counsel were unable to interview these witnesses. (Tr. 3). In addition, defense counsel complained that he never received a criminal history report on one of the State's witnesses. (Tr. 4). Defense counsel then also pointed out that the prosecutor's office called him last night and indicated "they were going to add a witness that hadn't previously been disclosed on the witness list." (Tr. 4).
As to the exculpatory fingerprint report, the prosecutor admitted that "there is such a report. And it's accurate that I have not gotten a copy to him." (Tr. 6). Defense counsel then stated that he understood from the police reports that some photographs had been taken which he had never seen. The prosecutor claimed that there are no photographs that they were aware of. (Tr. 7).
Visiting Judge MacMillan assigned to the case stated:
 JUDGE MacMILLAN: Much of the problem, and I don't know whether it's intentional or not, but the Prosecutor's unaware of certain evidence until the day of trial because either they didn't contact the police department to get it or the police department just nonchalantly says we don't have anything and then it shows up at the time of trial.
 So there's a lack of communication between the Prosecutor's Office and the police department, often, and it cannot be to the detriment of a Defendant. So, the — it always takes an adequate inquiry by the Prosecutor of the police department to make sure that everything is available. The fact that the police can simply keep it from the Prosecutor until the last minute is, you know, inappropriate. (Tr. 8).
As to the witnesses whose address was provided by the State, defense counsel informed the court that his investigators found the address to be a vacant house, and neighbors told them that the witnesses had been gone approximately five weeks. The prosecutor then admitted that they did get a new address for these witnesses and new phone numbers, but" "I did not, uh . . . realize that I needed to do a new Witness List for the purposes of the defense." (Tr. 10 — 11). The prosecutor admitted that defense counsel had not been notified of the new address, to which the judge replied: "Yeah. This last minute information, not disclosed at all, or disclosed rather informally, is not appropriate." (Tr. 11).
Judge MacMillan then opined: "Well, I think there's only two things that can be done, either dismiss the case or continue it. And I'm not, you know . . . (Tr. 11). Defense counsel replied: "Judge, I understand the difficulty here. My problem, and the reason I'm asking for a dismissal, is Mr. Tucker — I mean, excuse me, Mr. Johnson, has been in jail since August 2nd, when this occurred. Uh . . . we're now going on four and — he has signed a Time Waiver and the reason we signed the Time Waiver was to allow us time to do this investigation, to get these reports and interview these witnesses. And that's why I would object to a continuance and ask the Court to dismiss the charges." (Tr. 11 — 12). The prosecutor's office then argued for a continuance rather than a dismissal. Judge MacMillan responded: "Of course, the greatest judicial economy is to say if you can't prepare your case before the date of trial, then you won't have a trial, and we economize by dismissing a case. And I'm inclined to do that. This is ridiculous that a earlier trial date is — everyone should have been prepared then, and it turns out that as of that trial date, the Tuckers couldn't be found at that address . . ." (Tr. 14).
At the conclusion of the in-chambers hearing, the judge ruled as follows:
 JUDGE MACMILLAN: Well, I think because of the multiple failures of the Prosecutor to provide what was requested, the Court is inclined to dismiss this case. This is a case where it's been pending now for four months. The person's been in jail. From the notes of Judge Langer, it seems to be a real question of identification or might be identification, and, of course, the intent of the Defendant.
 So, I'm going to dismiss the case for failure of the Prosecutor to make available those things necessary for a defense, and especially with the time that's passed. And finding a proper address for witnesses at the last moment is simply not sufficient. (Tr. 17 — 18).
We have carefully reviewed the transcript of the in-chambers hearing and the entire record, and in view of the multiple failures of the prosecutor's office to abide by discovery requests and orders of the court, all of which completely frustrated the ability of counsel to defend his client, we do not find the sanction of dismissing the case against Johnson to be an abuse of discretion by the trial court. We understand, as the State points out in its brief, that dismissal with prejudice is the most extreme sanction that can be ordered, but we do not find it inappropriate in this case where Johnson has languished in jail for approximately four months while his defense preparations were completely frustrated by the prosecutor's office, whether inadvertently or by egregious negligence.
The assignment of error is overruled, and the judgment is affirmed.
WOLFF, P.J. and FAIN, J., concur.