JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Devinder Tate ("defendant") appeals from the jury verdict and his conviction for attempted murder, felonious assault, and firearm specifications. Defendant was also convicted of having a weapon while under disability. The court imposed a prison term of eight years and defendant appealed.
 {¶ 2} Vanessa Sarubbi is the defendant's former girlfriend and the mother of defendant's son. It was through defendant that Sarubbi and Jamal Long ("Long") met. Sarubbi moved out of defendant's apartment because she believed defendant was cheating on her. Long helped Sarubbi move her things. Long testified that defendant began threatening his life because Long was spending time with Sarubbi. Long testified that he was paranoid to the point he felt he needed to" secure" the area where he was residing.
 {¶ 3} On the evening of April 18, 2003, Long and Sarubbi were watching television in Long's bedroom around 2:00 a.m. Long's brother was upstairs. It is undisputed that someone shot Long that night. He was shot in the neck and stomach. Long and his brother testified that Long shouted, "Dink shot me." Long was shot through the bedroom window that was covered with blinds. The bedroom was lit only by the television screen. It was dark outside.
 {¶ 4} Defendant denied that he was the shooter. Long and Sarubbi both identified defendant as the shooter and both were certain they saw him outside the window that night. Through an angle in the blinds, Long said he could recognize the face in his window as defendant.
 {¶ 5} Defendant turned himself in on April 19, 2003. Detective Ezzo read him his Miranda rights and booked him. Ezzo testified that defendant told him "that the victim that was shot in this case had shot at [defendant] prior to this happening and it was over money * * * and a girl and what had happened was all for retaliation." (Tr. 287).
 {¶ 6} Ezzo told defendant he did not want to hear anymore and called the detectives to take defendant's statement. Ezzo made a report, but failed to mention anything about defendant's admissions to him. The defense was not informed of these oral statements until the day of trial. Defendant objected and moved to exclude the defendant's oral statements to Ezzo that were not produced according to Crim.R. 16. The trial court overruled defendant's objection, but allowed defendant to cross-examine Ezzo with his report.
 {¶ 7} Long has an extensive criminal record and cross-examination by the defense revealed his use of many aliases to deceive law enforcement. The defense also presented the testimony of an alibi witness, who stated that defendant was at her house from approximately 11:00 p.m. to at least 3:00 a.m. on April 18th and the 19th, 2003. Over defendant's objection, the court allowed the State to cross-examine this witness with defendant's written statement to police, although it was not in evidence. The written statement itself was not submitted to the jury.
 {¶ 8} The jury found defendant guilty of attempted murder with firearm specifications and two counts of felonious assault with firearm specifications. The court found defendant guilty of the bifurcated charge of having a weapon while under disability. The court sentenced defendant to serve a prison term of eight years.
 {¶ 9} Defendant raises three assignments of error for our review.
 {¶ 10} "I. The trial court erred by allowing the State to introduce on [sic] alleged oral statement of the appellant into evidence without first reducing it to writing an [sic] providing it to the defense in a reasonable time period before the start of trial."
 {¶ 11} Crim.R. 16(B)(1)(a) provides, in part:
 {¶ 12} "Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 13} "* * *
 {¶ 14} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer[.]" State v.Bidinost (1994), 71 Ohio St.3d 449, 456.
 {¶ 15} Crim.R. 16(E)(3) permits a trial court to exercise discretion in selecting the appropriate sanction for a discovery violation. Id., citing State v. Parson (1983),6 Ohio St.3d 442, 445. "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted." Id.
 {¶ 16} The rule was clearly violated in that the State failed to produce a written summary of defendant's oral statement to defendant upon his request. However, defendant does not contend that the failure to disclose was a willful violation by the State. The parties agree that the State presented the information as soon as the prosecutor learned of it. The defense did not seek a continuance but requested only that evidence of the oral statement be excluded as a sanction. Instead, the trial court allowed the defense to cross-examine Ezzo using his written report that did not mention the alleged oral statement. Because the record does not reflect that a written summary would have benefitted the defense in its trial preparations and no prejudice[1] from the last minute disclosure has been shown, we do not find that the trial court erred in admitting the oral statement. See Bidinost (1994), 71 Ohio St.3d at 457.
 {¶ 17} Assignment of Error I is overruled.
 {¶ 18} "II. The trial court erred by allowing the State to impeach a defense witness with the written statement of the appellant."
 {¶ 19} Defendant objected to the State's reference to defendant's written statement during its cross-examination of defendant's alibi witness. Defendant's alibi witness testified that on April 18, 2003, defendant was at her house sometime around 10:00 or 11:00 p.m., until at least 3:00 a.m. when she fell asleep. She further testified that she believed defendant spent the night, since he was still there at around 8:00 a.m. the next morning when she awoke.
 {¶ 20} During cross-examination, the court permitted the State to inquire as to whether the witness knew defendant had made a written statement. She did not. The State proceeded to ask her if she knew that he said he had left the house. She did not.
 {¶ 21} Defendant claims the use of the written statement that was not in evidence was improper and violative of his Fifth Amendment rights. The State argues that it was properly used to impeach the witness under Evid.R. 607 or that, in the alternative, it was harmless error. We agree with the latter.
 {¶ 22} Although the prosecutor mentioned the defendant's written statement, it was not introduced into evidence and was not submitted to the jury. We have reviewed the entire statement and the references to it in the record and find nothing inculpatory in defendant's statement about his whereabouts that night. Moreover, the portions of the written statement referred to at trial and the witness's testimony were not even inconsistent. The witness clearly indicated that she went to sleep around 3:00 a.m. and defendant said he left at 3:30 a.m. Given the balance of evidence in the record that included, but was not limited to, the testimony of two eyewitnesses who were certain defendant was the shooter and defendant's oral statements to law enforcement, any error in its use was harmless. Crim.R. 52(A).
 {¶ 23} Assignment of Error II is overruled.
 {¶ 24} "III. The verdicts are against the weight of the evidence."
 {¶ 25} To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 26} Here, defendant's convictions were not against the manifest weight of the evidence. We have summarized the facts from the record in some detail above. The jury heard testimony from eyewitnesses who claimed to be certain they saw defendant shoot Long. Long's brother testified that he heard Long exclaim that defendant had shot him as he lay on the floor immediately following the gunfire. The jury also heard defendant's alibi evidence and testimony about the crime-ridden nature of the neighborhood where the shooting occurred and the lack of outdoor lighting in that area. The arresting officer offered certain oral statements allegedly made to him by the defendant and was fully cross-examined by the defense. At the close of evidence, the jury concluded that defendant was guilty of the attempted murder and felonious assault of Long, with firearm specifications, but not guilty of the attempted murder or felonious assault of Sarubbi. We have reviewed the entire record and do not find that the jury clearly lost its way in resolving the conflicts in the evidence such that it created any manifest miscarriage of justice.
 {¶ 27} Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and McMonagle, J., Concur.
[1] The prejudice suffered by defendant as a result of the statement's admission must relate to the prosecution's failure to comply with Crim.R. 16 and not from the nature of the statement admitted.